

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00299-CV

———————————————

IN THE INTEREST OF T.F., T.F., AND T.F., CHILDREN

---

On Appeal from the 233rd District Court
Tarrant County, Texas
Trial Court No. 233-624922-17

---

Before Gabriel, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Gabriel

# MEMORANDUM OPINION

Appellant Rita Ford[1] appeals the trial court's denial of her motion for new trial, seeking relief from the trial court's default order entered against her and in favor of appellee Chris Ford after she failed to appear for a hearing. The order addressed conservatorship of their children, child- and medical-support obligations, and visitation. Rita argues that the trial court abused its discretion by denying her motion for new trial because she provided evidence that her failure to appear was caused by an adverse reaction to newly prescribed medications, that she had a meritorious defense, and that a new hearing would not cause delay or prejudice Chris. Chris does not respond to these arguments. We conclude that Rita's evidence sufficiently showed that she was entitled to a new hearing; thus, the trial court abused its discretion by failing to grant her motion.

## I. BACKGROUND

### A. MARRIAGE AND SEPARATION

Rita and Chris married in January 2001 and they had three children together: twins born in 2001 and a third child born in 2002. On October 30, 2011, Chris was arrested and charged with disorderly conduct and assault causing bodily injury to a family member—Rita. Rita immediately moved out of their home, taking the children with her. The children have continuously lived with Rita since 2011, but Rita and

---

[1]We use fictitious names to refer to the parties to protect the involved minors' identities. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8 cmt.

Chris apparently never divorced and remain separated. Rita lives in Grand Prairie, and Chris lives in Mansfield.

In 2012, Rita filed for Chapter 7 bankruptcy protection. In 2013, Chris pleaded guilty to the disorderly-conduct charge and was assessed a $500 fine. Chris pleaded not guilty to the assault charge, and the trial court adjudged him not guilty of this offense.[2]

## B. ATTORNEY GENERAL'S SUIT

On August 29, 2017, the Texas Attorney General filed a suit affecting the parent-child relationship (SAPCR), requesting that the trial court appoint "appropriate" possessory conservators, establish a child-support order, and order Chris to produce documents "that will show the nature and extent of his ability to pay child support."[3] *See* Tex. Fam. Code Ann. §§ 102.007, 153.005. The trial court set a hearing on the attorney general's petition for January 4, 2018. On December 27, 2017, Rita, appearing pro se,[4] filed a petition to intervene in the attorney general's SAPCR and sought appointment as the children's sole managing conservator. Chris,

---

[2]Rita later incorrectly asserted to the trial court that Chris had pleaded nolo contendere to the assault.

[3]Apparently in an earlier, separate SAPCR action, Chris was ordered to pay spousal maintenance and child support, but our record does not include this order or any specific information about the nature of this separate action.

[4]The trial court took judicial notice that Rita is a licensed attorney in Texas. *See* Tex. R. Evid. 201.

3

appearing through counsel, filed a counterpetition on January 2, 2018, also seeking sole managing conservatorship. He pleaded in the alternative for appointment either as a joint managing conservator with the right to designate the children's primary residence or as a joint managing conservator with an altered, standard possession schedule. *See id.* § 153.317. He also asked that the trial court order Rita to pay child and medical support.

On January 3, 2018, Rita sought to proceed without the payment of court costs and notified the court that she received food stamps and Medicaid, was a self-employed attorney earning $900 per month, and had had a stroke on December 28, 2017. *See* Tex. R. Civ. P. 145. That same day, the court signed an ex parte temporary restraining order finding that "there [was] a clear and present danger that [Chris would] attempt to . . . remove" the children and that Rita's "parental right to possession and access [would] be immediately and irreparably harmed." The court allowed Rita to intervene in the attorney general's child-support action and granted Rita "*exclusive possession*" of the children. The trial court further ordered Rita and Chris to appear for a show-cause hearing on January 17, 2018.

On January 17, the trial court reset the hearing "FOR FINAL TRIAL ON THE MERITS" for March 27, 2018. The attorney general's representative, Chris, and Chris's counsel signed the order; Rita did not sign the order, indicating that she had not appeared for the hearing. The order specifically warned that a failure to appear for the March 27 court date "may result in a default order or capias" and that the case

4

would be reviewed for dismissal for want of prosecution. The next day—January 18—Chris's counsel sent Rita a certified letter, notifying her that the case had been set for final trial on the merits on March 27 and attaching a copy of the trial court's January 17 order. On February 1, the trial court signed a notice of final trial, which had been prepared by Chris's counsel and which again notified the parties that "[t]he final trial of this case" would be on March 27. The notice stated that it should be served on Rita at her home in Grand Prairie. It appears that Rita was discharged from bankruptcy protection in February 2018.

On March 27, both Rita and Chris appeared, and the trial court entered temporary orders that named them joint managing conservators of the children. *See* Tex. Fam. Code Ann. § 105.001. The trial court found that Chris had "a duty of support" for the children and ordered Rita to enroll the children in a governmental medical-assistance program or health plan. The trial court set the next hearing for June 27.

Rita failed to appear for the subsequent June 27 child-support hearing, and the trial court found her in default. The trial court took judicial notice that Rita was a licensed attorney and that she had called "the court coordinator for the other court" that day. Chris testified that he sought joint managing conservatorship with the sole rights to designate the children's primary residence and to make educational and medical decisions for the children. He further requested that Rita be awarded the statutory, standard possession schedule. He testified that Rita was unemployed and

5

made no specific request for child- or medical-support payments; he did ask that the children remain on Medicaid. He believed that each request was in the children's best interest. After Chris's attorney informed the court that Rita had been a licensed attorney since 1995 and was in good standing with the Texas bar, the trial court determined that it would "at least set child support based on a gross of 75,000 a year. And set the nine percent per guidelines for both current support to begin July 1st, 2018."

That same day, the trial court entered an order, noting that Rita had not appeared and appointing Rita and Chris joint managing conservators of the children. The trial court found that Rita had a duty of support and designated Chris as the conservator with the exclusive rights to designate the children's primary residence in Tarrant County and to consent to any invasive medical procedure. The trial court awarded Rita a standard possession schedule. *See id.* § 153.316. The trial court ordered Rita to pay Chris $1,318 in child support each month and authorized income withholding from Rita's earnings. *See id.* §§ 154.007, .125; *see also id.* § 154.066 (allowing trial court to determine obligor is intentionally underemployed and to set support based on earning potential). Chris was ordered to enroll the children in a governmental medical-assistance or health plan and to maintain that enrollment; Rita was ordered to pay medical support, as additional child support, of $562.50 per month. *See id.* §§ 154.181–.182. Finally, the trial court entered injunctive relief as

Chris had requested. The trial-court clerk notified Rita of the June 27 order. *See* Tex. R. Civ. P. 306a.3.

### C. MOTION FOR NEW TRIAL

On July 26, Rita filed a motion for new trial, arguing that the default should be set aside because her failure to appear was not consciously indifferent but was due to an accident, because she had a meritorious defense, and because a new trial would not prejudice Chris or cause delay. In her attached affidavit, Rita stated that she had been prescribed "three prescription[s] for blood pressure" on June 26 and purchased four prescriptions that same day.[5] The next morning, Rita took each of the four medications before she left for court and had an adverse reaction:

> On the morning of June 27, 2018 I took each of the four (4) prescriptions. On the way to court for the *:30 am hearing I began to feel light headed due to a drop in blood pressure. I phone[d] the court to advise the court that I was too light headed to drive to Fort W[or]th due to an adverse reaction to the new prescriptions.

Rita averred that her "failure to appear was not due to conscious indifference but rather to an excusable medical condition and illness due to an adverse reaction to prescription medication prescribed due to three (3) strokes within six months." Rita also attached to her motion the attorney general's report showing that the office had received no child-support payments for the children as of July 25. She attached written statements from each of the children, who were over the age of twelve at that

---

[5]Rita attached a receipt dated June 26, showing that Rita had picked up four prescriptions from her pharmacy.

time, showing their desire to continue living with Rita. *See* Tex. Fam. Code Ann. § 153.009. Chris did not file a response. The trial court did not rule on the new-trial motion; thus, it was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c); *cf. Cecil v. Smith*, 804 S.W.2d 509, 510–12 (Tex. 1991) (recognizing "presentment" of new-trial motion not necessary in civil cases).

Rita filed a notice of appeal from "all portions" of the June 27 order. *See* Tex. Fam. Code Ann. § 109.002(a), (b). She now argues that the trial court abused its discretion by denying her motion for new trial, by granting Chris the right to designate the children's primary residence, by granting Chris injunctive relief, and by calculating Rita's child-support obligation. Chris has not filed a brief on appeal.

## II. ENTITLEMENT TO NEW HEARING AFTER DEFAULT

### A. STANDARD

The order at issue was entered as a result of Rita's default. We review a trial court's failure to grant a motion for new trial for an abuse of discretion. *See Cliff v. Huggins*, 724 S.W.2d 778, 778 (Tex. 1987). Ordinarily, the right to a new trial after a default is governed by an established, three-part test—the *Craddock* test—which gives a trial court no discretion to deny a new-trial motion if the test is met. *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. [Comm'n Op.] 1939). Thus, a new trial is mandatory if (1) the defendant's failure to answer before judgment was not intentional or the result of conscious indifference on the defendant's part, but was due to a mistake or accident; (2) the motion for new trial set up a meritorious defense;

8

and (3) the motion was filed at a time when its granting would not result in a delay or otherwise injure the plaintiff. *Id.* The *Craddock* test also applies to a post-answer default judgment entered when a party fails to appear at a trial setting. *See Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994); *Elite Towing, Inc. v. LSI Fin. Grp.*, 985 S.W.2d 635, 642 (Tex. App.—Austin 1999, no pet.). The supreme court has applied *Craddock* in SAPCR cases. *See, e.g.*, *In re R.R.*, 209 S.W.3d 112, 114–15 (Tex. 2006) (per curiam).[6]

## B. APPLICATION

### 1. Intentional or Consciously-Indifferent Conduct

The first *Craddock* prong is satisfied if Rita's factual assertions, taken as true, "negate intentional or consciously indifferent conduct" and if these factual assertions are not controverted by Chris. *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012). In general, "some excuse, although not necessarily a good one, will suffice to show that [Rita's] failure to [appear] was not because [she] did not care." *R.R.*, 209 S.W.3d at 115. Here, Rita offered an excuse that was not controverted and, taken as true,

---

[6]Intermediate appellate courts, including this court, have noted that the *Craddock* test, specifically the second prong, is ill-suited to SAPCR cases because it fails to expressly consider the best interest of the affected children, which is the overriding consideration in any SAPCR determining conservatorship, possession, and access. *See* Tex. Fam. Code Ann. § 153.002; *Dorrough v. Cantwell*, No. 2-05-208-CV, 2006 WL 2034016, at *6 (Tex. App.—Fort Worth July 20, 2006, pet. denied) (per curiam mem. op.); *Comanche Nation v. Fox*, 128 S.W.3d 745, 749–50 (Tex. App.—Austin 2004, no pet.); *Lowe v. Lowe*, 971 S.W.2d 720, 725–26 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). And while we recognize the tension between the *Craddock* test and the broad discretion courts have in determining a child's best interest, we continue to be bound by the test. *See Comanche Nation*, 128 S.W.3d at 750.

9

negated intentional or consciously indifferent conduct on her part. *See, e.g.*, *Anderson v. Anderson*, 282 S.W.3d 150, 154 (Tex. App.—El Paso 2009, no pet.); *cf. In re E.P.C.*, No. 02-10-00050-CV, 2010 WL 5187691, at *3 (Tex. App.—Fort Worth Dec. 23, 2010, no pet.) (mem. op.) (holding wife failed to meet first prong because she provided no evidence supporting her claim that her failure to appear was due to emergency surgery and pain medications). Chris failed to dispute Rita's proffered excuse, which was supported by her affidavit. Accordingly, Rita sufficiently established that her failure to appear was not intentional or due to conscious indifference. *See R.R.*, 109 S.W.3d at 115–16; *Kelley v. Sweeney*, No. 10-04-00233-CV, 2005 WL 2300350, at *2 (Tex. App.—Waco Sept. 21, 2005, no pet.) (mem. op.); *McClure v. Landis*, 959 S.W.2d 679, 681 (Tex. App.—Austin 1997, pet. denied). *See generally Old Republic Ins. Co. v. Scott*, 873 S.W.2d 381, 382 (Tex. 1994) (per curiam) ("If the factual assertions in the defendant's affidavits are not controverted, the defendant satisfies his or her burden if the affidavits set forth facts that, if true, negate intent or conscious indifference.").

## 2. Meritorious Defense

A meritorious defense is one that, if proven, would cause a different result on the retrial of the case, although it need not be a totally opposite result. *See Comanche Nation*, 128 S.W.3d at 751. In her motion, Rita argued that she had a meritorious defense regarding the children's best interest: (1) the children had been living exclusively with her since 2011; (2) the trial court had awarded her "*exclusive possession*"

10

of the children six months earlier after finding that Chris posed a clear and present danger to Rita's custody; (3) Chris had not paid child support even though ordered to do so; and (4) the children, all older than twelve, voiced their preference for remaining with Rita. Chris has disputed none of these facts. We conclude Rita's uncontroverted facts raised a meritorious defense on the issue of the children's best interest that should be considered by the trial court in the first instance. *See id.* at 751–52; *see also R.R.*, 209 S.W.3d at 115–16.

### 3. Delay or Prejudice

Finally, Rita must show that a new hearing would not cause delay or injury to Chris. Although Rita asserts in a conclusory manner that a new hearing would cause Chris no prejudice and would not delay the case, Chris has not controverted this assertion. Once Rita asserted no delay or prejudice, it was Chris's burden to show any injury or delay. *See R.R.*, 209 S.W.3d at 116; *Comanche Nation*, 128 S.W.3d at 752. Because Chris failed to do so, Rita has met this prong of the *Craddock* test.

### III. CONCLUSION

Rita met each of the three parts of the *Craddock* test, showing her entitlement to a new hearing on the issues addressed in the June 27 SAPCR order. As such, the trial court abused its discretion by denying her motion for new trial. We sustain Rita's first issue. We need not address Rita's remaining issues directed to the substance of the order. *See* Tex. R. App. P. 47.1. Accordingly, we reverse the trial court's June 27,

11

2018 order and remand the case to the trial court for further proceedings. *See* Tex. R.

App. P. 43.2(d), 43.3(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered: May 9, 2019